U.S. DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
FILED
MAY 27 2015
JAMES W. McCORMACK, CLERK
BY: _____ DEPUTY CLERK
IN OPEN COURT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 4:15-CR-00108 JLH |
| vs. | ) |
| | ) 18 U.S.C. § 1343 |
| STEPHEN K. PARKS | ) |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT 1

#### A. Introduction

1. The refined coal tax credit was added to the tax code by the American Jobs Creation Act of 2004, Pub L. No. 108-357.

2. In 2011 and 2012, 26 U.S.C. § 45 provided that "refined coal" means a fuel which (i) is a liquid, gaseous, or solid fuel produced from coal (including lignite) or high carbon fly ash, including such fuel used as a feedstock, (ii) is sold by the taxpayer with the reasonable expectation that it will be used for the purpose of producing steam, and (iii) is certified by the taxpayer as resulting (when used in the production of steam) in a qualified emission reduction. Qualified emission reduction means "a reduction of at least 20 percent of the emissions of nitrogen oxide and at least 40 percent of the emissions of either sulfur dioxide or mercury released when burning the refined coal (excluding any dilution caused by materials combined or added during the production process) as compared to the emissions when burning the feedstock coal or comparable coal predominately available in the marketplace as of January 1, 2003."

3. According to 26 U.S.C. § 45(e)(8)(A), "[i]n the case of a producer of refined coal, the credit determined under this section (without regard to this paragraph) for any taxable year shall be increased by an amount equal to $4.375 per ton of qualified refined coal – (i) produced

1

by the taxpayer at a refined coal production facility during the 10-year period beginning on the date the facility was originally placed in service, and (ii) sold by the taxpayer – (I) to an unrelated person, and (II) during such 10-year period and such taxable year." As of 2011 and 2012, a "refined coal production facility" means a facility which is "placed in service after the date of the enactment of the American Jobs Creation Act of 2004 and before January 1, 2012."

4. On or about June 1, 2010, STEPHEN K. PARKS ("Parks") formed Global Coal, LLC ("Global Coal").

5. Parks was listed as the CEO in the Operating Agreement of Global Coal, dated July 15, 2010, which replaced the Operating Agreement dated June 1, 2010.

6. Parks was listed as the Manager of Global Coal on the Subscription Document for Membership Interests in the Limited Liability Company as of December 30, 2011.

7. At all times material to this Information, Parks was also the President of Ecotec Coal, LLC ("Ecotec Coal") and King Coal, LLC ("King Coal").

### B. The Scheme

8. From in or about late 2011 and continuing to on or about January 13, 2012, in the Eastern District of Arkansas and elsewhere, the defendant,

STEPHEN K. PARKS,

voluntarily and intentionally and with intent to defraud, devised and participated in a scheme to defraud an investor with knowledge of its fraudulent nature and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means

9. In late December 2011, a broker and lobbyist ("Individual A"), who worked with Parks on Refined Coal Tax Credit matters, notified the Executive Assistant/Office Manager for

King Coal and Ecotec Coal that an investor was interested in purchasing Refined Coal Tax Credits.

10. On January 9, 2012, Individual A emailed the investor's representative advising that the investor would receive Subscription Agreements and K-1s from Ecotec Coal for 268,000 units of interest and Global Coal for 845,000 units of interest. The email represented that "Global Coal is one of our newer LLCs that is creating credits based upon new production." The total sales price was $723,450 for units of interest in both Ecotec Coal and Global Coal. Parks and his Executive Assistant/Office Manager were copied on the email. Parks replied "everything looks great except the 11 K-1's will not be here for a week."

11. In or about January 2012, Parks, assisted by others, sold 845,000 Class C units of interest of Global Coal. The invoice, which is dated December 30, 2011, states, "845,000 Class C units of Global Coal, LLC, the sole benefit of which is 845,000 of Refined Coal Tax Credits, at a price of $0.65 per unit." The invoice reflects a "Total Due" of $549,250 "Due and Payable by January 10, 2012." The invoice further directs that "Payment to be made by wire transfer" to Account Name "KCH, LLC c/o Global Coal", account number XXXXX437 at Delta Trust.

12. The "GLOBAL COAL, LLC" "Subscription Document for Membership Interests in the Limited Liability Company" states, "The Subscriber acknowledges and understands that the Units have as their principal economic benefit the aforementioned dollar amount of federal income tax credits for Refined Coal produced at a Qualified Coal Production Facility as reported on Form 8835, Renewable Electricity and Refined Coal Production Credit and distributed to each partner through Schedule K-1, Form 1065."

13. As of March 2015, Global Coal has never filed a Federal Income Tax Return.

14. Global Coal never sold any refined coal to an unrelated third party as defined by 26 U.S.C. § 45. Global Coal did not produce any refined coal as defined by 26 U.S.C. § 45.

Global Coal did not have a qualified facility in place to refine coal. Global Coal did not generate or create any refined coal tax credits. Despite these facts, Parks, by and through Individual A and others, represented to investors that the refined coal tax credits for Global Coal existed and that they were available for sale.

15. On October 1, 2009, Parks opened Delta Trust & Bank account number XXXXX437 in the name of "King Coal WV LLC." On December 4, 2009, Parks changed the name of the account to "King Coal WV LLC For the Benefit of Ecotec Coal." On May 17, 2010, Parks changed the name of the account to "King Coal Holdings LLC." Parks was listed as the authorized signer on each of the mentioned accounts.

16. On or about January 13, 2012, the investor wired $549,250 to King Coal Holding's bank account with an account number XXXXX437 at Delta Trust & Bank in exchange for $845,000 in Global Coal Refined Coal Tax Credits.

17. On or about April 13, 2012, a $40,000 check to Parks' wife with a memo line reflecting Coal Rights AR cleared account number XXXXX437.

18. On or about July 6, 2012, a check to Delta Trust & Bank for $301,271.50 cleared account number XXXXX437, which purchased a cashier's check number 098301 made payable to Standard Abstract. On or about July 6, 2012, King Coal Holdings, LLC purchased a residence located at 4817 Stonewall Road, Little Rock, Arkansas with cashier's check number 098301. The residence at 4817 Stonewall Road, Little Rock, Arkansas is located immediately behind Parks' personal residence.

### D. The wire

19. On or about January 13, 2012, in the Eastern District of Arkansas and elsewhere, the defendant and others, for the purpose of executing the scheme and artifice to defraud

described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds resulting in a wire transfer in the amount of $549,250 from a bank in Iowa to King Coal Holding's bank account number XXXXX437 at Delta Trust & Bank in Arkansas.

All in violation of Title 18, United States Code, Section 1343.


CHRISTOPHER R. THYER
UNITED STATES ATTORNEY

*[signature: Stephanie Mazzanti]*

By PATRICIA S. HARRIS (AR Bar #89208)
STEPHANIE MAZZANTI (AR Bar #2006298)
Assistant United States Attorneys
P.O. Box 1229
Little Rock, AR 72203
501-340-2600
tricia.harris@usdoj.gov
stephanie.mazzanti@usdoj.gov